UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                       Case No.: 8:19-cr-555-TPB-JSS

JOSEPH MARION

_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO SUPPRESS

THIS MATTER is before the Court on Defendant Joseph Marion's Motion to Suppress ("Motion") (Dkt. 80) and the Government's response in opposition (Dkt. 89).  On June 29, 2021, the Court held an evidentiary hearing on the Motion.  For the reasons that follow, the Court recommends that the Motion be denied.

### FINDINGS OF FACT

The witnesses at the evidentiary hearing were Pinellas County Sheriff's Corporal Joseph Michael, Pinellas County Sheriff's Detective Lionel Fuentes, Drug Enforcement Agency Special Agent Lindsay Shaffer, and Defendant.

Defendant was suspected by the Pinellas County Sheriff's Office ("PCSO") to be a distributor of fentanyl and other narcotics.  On September 17, 2019, PCSO detectives arrested Sherman Puckett, also known as "Red," on a federal arrest warrant involving possession of controlled substances with intent to distribute.  Puckett told detectives that Defendant was his supplier of fentanyl and that he had been at Defendant's apartment the previous day to purchase nine ounces of fentanyl.  Although the deal did not occur, Puckett believed that Defendant was still in

possession of approximately three kilograms of fentanyl.  Puckett gave detectives Defendant's cell phone number, described the location of Defendant's apartment complex, and said he believed Defendant lived in building 51.

Corporal Michael investigated the information Puckett had supplied and, with the assistance of Detective Fuentes, determined that a Cadillac was registered to Defendant, who was also known as "Backpage Jay."  In the early morning hours of September 18, 2019, Corporal Michael drove to the apartment complex Puckett had described.  Corporal Michael testified that his purpose in traveling to the complex was to move forward on the information Puckett had provided.  After entering the parking lot, Detective Michael located a Cadillac with Defendant's license plate parked near building 51.  At around 2:00 a.m., Corporal Michael began surveilling building 51.  He did not see anyone coming or going from the building at that time.

While Corporal Michael watched building 51, several additional officers arrived, including SA Shaffer and Detective Fuentes.  SA Shaffer discussed the strategy of making a cold call to Defendant.  Using an undercover phone number, SA Shaffer sent a text to Defendant, stating, "Red got picked up said get ur shit out."  Within a few minutes, Defendant called the number SA Shaffer had sent the text from.  Defendant identified himself as "Jay."  SA Shaffer told Defendant that "Red" had been "picked up," and that he had said to tell "Jay" to "get your shit and go."  SA Shaffer gave her name as "Natalie."  Defendant thanked "Natalie" for the information and ended the call.

Approximately five minutes after the call, detectives saw Defendant walking through the breezeway outside building 51 carrying a blue Lids plastic shopping bag and a holding his cell phone, which was visible due to the illuminated screen. Defendant walked by the unmarked car where Detective Fuentes was sitting. Detective Fuentes and Sergeant Michael Papamichael stepped out of their car and announced, "Sheriff's Office."  The officers were wearing PCSO shirts and did not have their weapons drawn.  Defendant stopped and tossed the shopping bag approximately eight or nine feet away between two parked vehicles, one of which was Defendant's Cadillac.  The officers placed Defendant in handcuffs.  As SA Shaffer walked up and approached the shopping bag, Defendant said, "That's not mine."  SA Shaffer noticed a powder residue on the outside of the bag and used her baton to open the bag further, discovering suspected fentanyl and other suspected controlled substances.  Once he was handcuffed and read his *Miranda*[1] rights, Defendant said that he had "fucked up" and told the officers to shoot him or take him to jail.  Based on Defendant's statements, the officers took Defendant into custody under Florida's Baker Act, Fla. Stat. § 394.463.

In his testimony before the Court, Defendant, who was advised in court of his Fifth Amendment rights, recalled his arrest and acknowledged that he left his apartment carrying the Lids shopping bag and his cell phone.  Defendant said that as he was walking towards his vehicle, officers announced, "Sheriff's Office."  According

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

to Defendant, when he looked over his shoulder, one of the officers said, "Don't move or I'll shoot your ass," while pointing a gun at Defendant.  In response, Defendant dropped everything and turned around.  Defendant testified that he never denied ownership of the bag.

## APPLICABLE STANDARDS

The Fourth Amendment protects individuals from unreasonable searches and seizures.  U.S. Const. amend. IV; *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011).  Generally, absent consent, a police officer must obtain a warrant supported by probable cause to justify a search or seizure under the Fourth Amendment.  *United States v. Hollins*, 336 F. App'x 921, 922 (11th Cir. 2009).

Although the Fourth Amendment protects against unreasonable searches and seizures, "suppression is not an automatic consequence of a Fourth Amendment violation."  *Herring v. United States*, 555 U.S. 135, 136 (2009).  The Supreme Court has explained that the Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands."  *Arizona v. Evans*, 514 U.S. 1, 10 (1995).  Nevertheless, the Supreme Court established "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial."  *Herring*, 555 U.S. at 136.  This "judicially created rule is 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.'"  *Id.* at 139–40 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

## ANALYSIS

Defendant moves to suppress the narcotics found in the Lids bag, which officers searched without a warrant during Defendant's arrest. Defendant further argues that the officers lacked probable cause to arrest him. In response, the Government argues that Defendant abandoned the Lids bag and that he therefore lacks standing to raise a Fourth Amendment challenge. In the alternative, the Government relies on the inevitable discovery doctrine, asserting that the bag would have been discovered during an inventory search conducted after Defendant's lawful arrest. Lastly, during argument before the Court, the Government argued that the presence of suspected fentanyl on a bag left in a parking lot was a public safety emergency that relieved officers of the warrant requirement.

### A. Abandonment

A suspect loses his Fourth Amendment standing to challenge a warrantless search if he abandons his possessory interest in the item searched. *United States v. Sparks*, 806 F.3d 1323, 1340–42 (11th Cir. 2015), *overruled in part by United States v. Ross*, 963 F.3d 1056, 1066 (11th Cir. 2020). In *Sparks*, for example, the court held that a couple abandoned a cellphone when they left it at a Walmart store, knew its location, and did not retrieve the phone. *Id.* at 1343-44. Courts have also found abandonment where a defendant discards items during a police chase. *See, e.g.*, *United States v. Tinoco*, 304 F.3d 1088, 1117 (11th Cir. 2002) (holding the defendants had no standing to challenge the seizure of cocaine thrown overboard while they fled from the police);

*United States v. Edwards*, 441 F.2d 749, 751 (5th Cir. 1971)[2] ("Defendant's right to Fourth Amendment protection came to an end when he abandoned his car to the police, on a public highway, with engine running, keys in the ignition, lights on, and fled on foot."). Similarly, courts have found abandonment where a person decides to leave his property when law enforcement approaches or seeks to examine the property. *See, e.g., United States v. McKennon*, 814 F.2d 1539, 1545–46 (11th Cir. 1987) ("By relinquishing possession and control of the carry-on bag, . . . McKennon assumed the risk of discovery and effectively surrendered the capacity to exclude others from the bag.").

Courts employ an objective test in deciding the issue of abandonment, focusing on the prior possessor's "intent, as discerned from statements, acts, and other facts." *Sparks*, 806 F.3d at 1342 (citation omitted). "All relevant circumstances existing at the time of the alleged abandonment should be considered," and "the critical inquiry . . . is whether the person prejudiced . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question." *Id.* (internal quotation marks and citations omitted).

Here, having considered the testimony and other evidence presented during the evidentiary hearing, the Court finds that Defendant voluntarily abandoned the shopping bag after law enforcement officers announced their presence. Specifically, the Government offered consistent, credible testimony that Defendant tossed the

---

[2] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting pre-October 1981 Fifth Circuit case law as binding precedent).

shopping bag approximately eight feet away after the officers announced their presence.  Defendant tossed the bag toward two parking spaces, and the bag was between six and eight feet away from Defendant when SA Shaffer walked up as officers were handcuffing him.  Defendant's conduct demonstrates an attempt to distance himself from the shopping bag and disclaim any interest in it.  *See generally United States v. Dillard*, 78 F. App'x 505, 512 (6th Cir. 2003) (collecting relevant cases where defendants who, immediately prior to a police encounter, threw away items containing incriminating evidence).  Moreover, when SA Shaffer walked up, Defendant spontaneously stated, "That's not mine."  *See United States v. Han*, 74 F.3d 537, 543 (4th Cir. 1996) ("Denial of ownership . . . constitutes abandonment.").

The Court notes that Defendant, in his testimony, denied tossing the bag and said he never denied that it was his.  Defendant also testified that he only dropped the bag in response to a threat made by one of the officers.  Having considered the demeanor of the witnesses on the stand, the consistencies in the testimonies of the law enforcement witnesses, and the interests of the witnesses in testifying, the Court finds the corroborating, consistent testimonies of the officers more credible than that of Defendant.  *See, e.g.*, *United States v. Ramirez-Chilel*, 289 F.3d 744, 748 (11th Cir. 2002) (deferring to credibility determination where magistrate judge "weighed the testimonies of all the witnesses, taking into account the interests of the witnesses, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand").

Based on Defendant's act of tossing the shopping bag several feet away, coupled within his statement denying ownership of the bag, the Court finds that Defendant abandoned his possessory interest in the bag. In addition, the Court does not find that Defendant's action resulted from improper law enforcement conduct. The officers were lawfully surveilling Defendant's apartment building after receiving information from Puckett identifying Defendant as his supplier. The officers were in a location where they were authorized to be. SA Shaffer placed a controlled call referring to Puckett's arrest and implying that Defendant should remove any narcotics from the apartment. That officers made Defendant aware of the investigation does not represent misconduct. Moreover, Defendant reacted to that information in a way that corroborated the tip provided by Puckett. *See United States v. Heard*, 367 F.3d 1275, 1280 (11th Cir.) ("[A] suspect's *adverse* reaction to police may independently corroborate information provided by an . . . informant.") (emphasis in original).

In sum, when Defendant left his apartment carrying a shopping bag shortly after the controlled call, officers had a sufficient particularized and objective basis to approach him and ask him about the contents of the bag based on their suspicion that he was removing narcotics from his apartment. After the officers announced their presence, Defendant voluntarily abandoned his possessory interest in the bag. Defendant therefore lacks Fourth Amendment standing to challenge the warrantless search of the shopping bag.

## B. Inevitable Discovery

Alternatively, the evidence supports a finding that the contents of the bag would have been inevitably discovered during an inventory search conducted pursuant to Defendant's arrest.  Under the exception for "inevitable discovery," the government may introduce evidence that was obtained by an illegal search if the government can establish a "reasonable probability that the evidence in question would have been discovered by lawful means." *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004).  The government must also establish that "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *Id.*

Here, Defendant exited his apartment carrying a shopping bag minutes after SA Shaffer made a controlled call warning him that an associate had been arrested and urging him to "get [his] shit out" of the apartment.  At the time Defendant left his apartment, the content of the shopping bag was a matter of speculation.  Although the officers had a basis to conduct a brief investigatory detention, mere suspicion is not sufficient to support a finding of probable cause to conduct an arrest.  *See Coffin v. Brandau*, 642 F.3d 999, 1007 (11th Cir. 2011) ("Probable cause requires more than a mere suspicion, but not the level of convincing proof necessary to support a conviction.").

However, it is not necessary to determine whether officers possessed probable cause to arrest Defendant immediately after he left his apartment.  When the officers announced their presence, Defendant tossed the shopping bag containing suspected

9

narcotics approximately eight feet away. Defendant's conduct, coupled with the additional information known to the officers at that time, established probable cause to arrest Defendant for possession of a controlled substance. *See, e.g.*, *United States v. Dicks*, 791 F. Supp. 306, 308 (D.D.C. 1992) ("Once Officer Nitz asked the defendant where he lived and observed the defendant's attempt to drop or secrete the clear plastic object in his pocket, the officer had probable cause to believe that a crime had been or was being committed."); *United States v. Hollman*, 541 F.2d 196, 198–99 (8th Cir. 1976) (holding defendant's action in throwing a box containing suspected heroin packets out his car window during a traffic stop "supplied probable cause to make an arrest on the narcotics charge"); *United States v. Blake*, 484 F.2d 50, 54 (8th Cir. 1973) (finding probable cause existed to arrest defendant who had been seen ready to toss a white purse containing suspected narcotics from a balcony).

Because probable cause existed to arrest Defendant before SA Shaffer searched the shopping bag, the Court concludes that the contents of the bag would have been inevitably discovered during a routine inventory search incident to arrest. As the officers testified, PCSO policy requires officers to inventory items a suspect abandons during an arrest. Thus, the arresting officers would have performed an inventory search of Defendant's possessions, including the bag, even though Defendant had attempted to abandon the bag. Based on the evidence presented to the Court, Defendant's Motion to Suppress is due to be denied on this alternative basis. *See, e.g.*, *United States v. Ethingor*, 388 F. App'x 858, 861 (11th Cir. 2010) ("[W]e conclude that the firearm was admissible under the inevitable-discovery exception to the

exclusionary rule because it would have been found by the police during their subsequent inventory search of Warren's vehicle.").

### C. Exigent Circumstances

Lastly, the Government argues that Defendant's Motion to Suppress is also due to be denied because the apparent presence of fentanyl on and inside the shopping bag presented an exigent circumstance.  It is well-settled that the warrant requirement of the Fourth Amendment must yield in those situations in which exigent circumstances require law enforcement officers to act without delay.  *See, e.g.*, *Payton v. New York*, 445 U.S. 573, 585–86 (1980).  Exigent circumstances exist in situations which present "danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal or concealment of evidence; and hot pursuit of a fleeing suspect."  *United States v. Santa*, 236 F.3d 662, 669 (11th Cir. 2000) (internal citations omitted).

The Government relies on the testimony of the officers that fentanyl is highly lethal even in small doses and that SA Shaffer observed a powder she suspected to be fentanyl on the outside of the shopping bag.  The Court accepts as true the testimony and argument presented that the quantity of fentanyl found in Defendant's shopping bag presented a danger of harm to the public if it fell into the hands of a third party.  However, no testimony was presented demonstrating that the officers were unable to safeguard the shopping bag while seeking a search warrant.  Thus, the Government has not presented sufficient evidence to support an alternative finding that exigent circumstances justified the warrantless search of the shopping bag.  *See Bates v. Harvey*,

11

518 F.3d 1233, 1245 (11th Cir. 2008) (noting that "police thus bear a heavy burden of proving that the exigent circumstances exception validates a warrantless entry or search").

Accordingly, it is **RECOMMENDED** that Defendant's Motion to Suppress (Dkt. 80) be **DENIED**.

**IT IS SO REPORTED** in Tampa, Florida on August 13, 2021.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
Counsel of Record